[Cite as *Small World Early Childhood Ctr. v. Ohio Dept. of Job & Family Servs.*, 2017-Ohio-8336.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SMALL WORLD EARLY CHILDHOOD CENTER | : | |
| | : | |
| | : | C.A. CASE NO. 27448 |
| Plaintiff-Appellant | : | |
| | : | T.C. NO. 16-CV-5982 |
| v. | : | |
| | : | (Civil Appeal from |
| OHIO DEPT. OF JOB & FAMILY SERVICES | : | Common Pleas Court) |
| | : | |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 27th day of October, 2017.

. . . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685 and ANTHONY S. VanNOY, Atty. Reg. No. 67052, 130 W. Second Street, Suite 1624, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

REBECCA L. THOMAS, Atty. Reg. No. 0066650, Assistant Attorney General, Health and Human Services Section, 30 E. Broad Street, 26th Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Small World Early Childhood Center appeals from a judgment of the Montgomery County Court of Common Pleas, which dismissed, pursuant to Civ.R. 12(B)(1), Small World's administrative appeal of two decisions by the Ohio Department of Jobs and Family Services (ODJFS). For the following reasons, the trial court's judgment will be affirmed.

**I. Background and Procedural History**

{¶ 2} Small World is a child daycare provider that had a contract with ODJFS to provide publicly-funded child care. In the spring of 2015, ODJFS received allegations that Small World was improperly in possession of Ohio Electronic Child Care (ECC) swipe cards and that Small World's staff was using the cards to check children into the center when they were not actually in attendance. ODJFS conducted an investigation.

{¶ 3} According to the termination decision on appeal, ODJFS personnel conducted a timed observation on April 23, 2015 and counted 62 children entering the center between 6:00 a.m. and 7:00 a.m. During the same time, Ohio ECC records showed 170 children were swiped in as having arrived at the center. ODJFS personnel returned on May 21, 2015, and performed another timed observation between 6:00 a.m. and 8:15 a.m. and observed 105 children arriving. Ohio ECC transactions for that same period showed that Small World had 217 children swiped in as arriving and receiving care. ODJFS staff entered the building and conducted a head-count; 108 children were present.

{¶ 4} ODJFS staff identified themselves to Small World staff, spoke to the owner, and asked for permission to search the facility. ODJFS located 99 Ohio ECC swipe cards. Interviews with Small World staff indicated that the center's owner, administrator,

and office managers used the swipe cards. ODJFS collected billing and attendance records from Small World. ODJFS concluded that it had overpaid Small World by $442,963.67.

{¶ 5} On April 15, 2016, ODJFS provided Small World with a written Child Care Provider Investigative Report, recommending suspension and termination of the Provider Agreement, as well as a Proposed Suspension and Termination of Provider Agreement and Overpayment Collection Notice. (The investigative report and the notice are not part of the record.) On April 20, 2016, Small World filed an appeal of the suspension and termination decision with ODJFS. The same day, it sought reconsideration by ODJFS of the overpayment calculation.

{¶ 6} On November 16, 2016, ODJFS sent two decision letters to Small World, one of which denied Small World's appeal of the suspension and termination decision and the other denying reconsideration of the overpayment calculation. The reconsideration decision expressly stated that the "reconsideration decision is final and not subject to further review by the department." The letter informing Small World of the suspension and termination decision similarly stated, "This appeal decision is final and not subject to further review by the department." Both determinations were made by the bureau chief of ODJFS's Office of Fiscal and Monitoring Services, Monitoring and Consulting Services Division.

{¶ 7} On November 22, 2016, Small World filed a notice of appeal, pursuant to R.C. 119.12 and R.C. 5101.35, in the Montgomery County Court of Common Pleas. Small World claimed that both ODJFS decisions were "not supported by reliable, probative, and substantial evidence and [were] not in accordance with law." Small World

filed motions to stay the ODJFS decisions and for court-ordered mediation. The court denied both motions.

{¶ 8} On December 19, 2016, ODJFS moved to dismiss the appeal for lack of jurisdiction, pursuant to Civ.R. 12(B)(1). ODJFS argued that the decisions on appeal were not "adjudications" by an "agency" for purposes of R.C. Chapter 119, nor was this the type of matter that triggered rights conferred or duties imposed under that chapter. ODJFS further argued that R.C. 5101.35 provided no statutory authority for an appeal of the two decisions. Small World opposed the motion.

{¶ 9} On January 26, 2017, the trial court agreed with ODJFS and granted the motion to dismiss for lack of jurisdiction. Small World appeals the trial court's decision.

## II. Jurisdiction to Small World's Administrative Appeal

{¶ 10} In its sole assignment of error, Small World claims that "[t]he trial court erred when it dismissed Small World's Administrative Appeal because Small World was entitled to judicial review pursuant to the Ohio Revised Code."

{¶ 11} A motion to dismiss for lack of subject matter jurisdiction, pursuant to Civ.R. 12(B)(1), challenges whether the complaint raises any cause of action cognizable by the forum. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12. We review de novo the trial court's dismissal of Small World's administrative appeal for lack of jurisdiction. *See id.*; *Crawford v. United Dairy Farmers, Inc.*, 2d Dist. Montgomery No. 25786, 2013-Ohio-5047, ¶ 8.

{¶ 12} "It is well-settled law that a state is not subject to suit in its own courts unless it expressly consents to be sued." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 7. Since 1913, the Ohio Constitution has provided that

"[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." Ohio Constitution, Article I, Section 16. However, this constitutional provision "did not provide specific consent for every state entity to be sued in every state court. Rather, it merely enabled the state to pass statutes consenting to be sued in specific ways; unless an explicit statutory waiver exists, the presumption of sovereign immunity applies." (Citations omitted.) *Proctor* at ¶ 8.

{¶ 13} Article IV, Section 4(B) of the Ohio Constitution grants the Ohio legislature exclusive authority to define the jurisdiction of the courts of common pleas. Article IV, Section 4(B) provides, in relevant part, that courts of common pleas have "such powers of review of proceedings of administrative officers and agencies as may be provided by law."

## A. R.C. Chapter 5104

{¶ 14} We begin with a review of the relevant portions of R.C. Chapter 5104, the chapter under which Small World contracted with ODJFS to receive public funds for child daycare. (Pursuant to R.C. 5101.30, ODJFS was designated as the state agency responsible for administration and coordination of federal and state funding for publicly funded child care in Ohio.)

{¶ 15} Certain provisions governing publicly funded child care required the creation of a process for applying for publicly funded child care, as well as procedures for determining whether the applicant is eligible to receive publicly funded child care. *See* R.C. 5104.33 and R.C. 5104.34. R.C. 5104.34(A)(1) expressly provides that "[a]n applicant aggrieved by a decision or delay in making an eligibility determination may appeal the decision or delay to the department of job and family services in accordance

with section 5101.35 of the Revised Code.   The due process rights of applicants shall be protected."

{¶ 16} R.C. 5104.31 specifies what entities may provide publicly funded child care, and R.C. 5104.32(A) requires that "all purchases of publicly funded child care shall be made under a contract entered into by a licensed child day-care center * * * and the department of job and family services."   R.C. 5104.32(B) sets forth specific terms that are required to be included in each contract for publicly funded child care.   R.C. 5104.32(A) further provides, in part:

> To the extent permitted by federal law and notwithstanding any other provision of the Revised Code that regulates state contracts or contracts involving the expenditure of state or federal funds, all contracts for publicly funded child care shall be entered into in accordance with the provisions of this chapter and are exempt from any other provision of the Revised Code that regulates state contracts or contracts involving the expenditure of state or federal funds.

Small World was a licensed child daycare provider that contracted with ODJFS to provide publicly funded child care, pursuant to R.C. 5104.32.

{¶ 17} Finally, R.C. 5104.37 provides that ODJFS may withhold any money due and may recover any money erroneously paid to an eligible provider of publicly funded child care if evidence exists that the provider did not fully comply with the statutory requirements or any rules promulgated under the statute.   This statutory section reads, in part:

> (D) Subject to the notice and appeal provisions of divisions (G) and (H) of

this section, the department may suspend a contract entered into under section 5104.32 of the Revised Code with an eligible provider if the department has initiated an investigation of the provider for either of the following reasons:

(1) The department has evidence that the eligible provider received an improper child care payment as a result of the provider's intentional act.

(2) The department receives notice and a copy of an indictment, information, or complaint charging the eligible provider or the owner or operator of the provider with committing [certain offenses].

(E)(1) Except as provided in division (E)(2) of this section, the suspension of a contract under division (D) of this section shall continue until the department completes its investigation * * *.

(2) If the department initiates the termination of a contract that has been suspended pursuant to division (D) of this section, the suspension shall continue until the termination process is completed.

(F) An eligible provider shall not provide publicly funded child care while the provider's contract is under suspension pursuant to division (D) of this section. * * *

(G) Before suspending an eligible provider's contract pursuant to division (D) of this section, the department shall notify the eligible provider. * * *

(H) *An eligible provider may file an appeal with the department regarding any proposal by the department to suspend the provider's contract pursuant to division (D) of this section. The appeal must be received by the*

*department not later than fifteen days after the date the provider receives the notification described in division (G) of this section. The department shall review the evidence and issue a decision not later than thirty days after receiving the appeal. The department shall not suspend a contract pursuant to division (D) of this section until the time for filing the appeal has passed or, if the provider files a timely appeal, the department has issued a decision on the appeal.*

(Emphasis added.) R.C. 5104.37(D)-(H). Nothing in R.C. 5104.37 provides for an appeal to the court of common pleas of a suspension or termination of an eligible provider's contract or of an order for repayment of any money erroneously paid to an eligible provider.

{¶ 18} R.C. 5104.38 states that the director of ODJFS shall adopt rules, in accordance with R.C. Chapter 119, governing financial and administrative requirements for publicly funded child care. The statute enumerates 13 areas which were to be addressed by rule, none of which related to appeal procedures for eligible providers whose contracts were suspended or terminated or who were found to have wrongfully received payments. R.C. 5104.38(N) allowed for "[a]ny other rules necessary to carry out sections 5104.30 to 5104.43 of the Revised Code."

{¶ 19} The rules for publicly funded child care are located in Ohio Adm.Code Ch. 5101:2-16. Ohio Adm.Code 5101:2-16-44 states that "[t]he provider agreement as entered into with ODJFS may be suspended and/or terminated if ODJFS determines misuse of publicly funded child care or Ohio ECC," and that "[t]he provider agreement as entered into with ODJFS, [sic] may be terminated in accordance with the terms contained

in the agreement." *Id.* at (N), (O). However, this administrative rule does not provide any appeal rights.

{¶ 20} Ohio Adm.Code 5101:2-16-71 relates to improper payments to providers or misuse of publicly funded child care. The rule addresses what is a "provider improper child care payment," what is misuse of publicly funded child care or Ohio ECC by a provider, what are the repayment procedures for an improper payment or an overpayment due to misuse of Ohio ECC, how a provider can request a review of the identified overpayment, and what is provider fraud. With respect to the review provision, Ohio Adm.Code 5101:2-16-71(D) states:

(D) Can a child care provider request a review of an identified overpayment?

(1) A child care provider may request in writing to ODJFS that a reconsideration review be conducted for any identified overpayment that is subject to recoupment.

(2) The written request must be received by ODJFS no later than fifteen days after the date the provider receives the overpayment notice.

{¶ 21} Finally, Ohio Adm.Code 5101:2-16-72 addresses "program integrity reviews" of the publicly funded child care program, which include reviews, audits, investigations, and other activities to ensure that the program is limited to eligible participants and that "payments to providers are for actual services provided and conform to program rules." The rule states, in part:

(F) What happens if ODJFS determines misuse of publicly funded child care or Ohio electronic child care (Ohio ECC) * * *?

ODJFS may do any of the following:

(1) Suspend the provider agreement entered into with ODJFS pursuant to rule 5101:2-16-44 of the Administrative Code and in accordance with section 5104.37 of the Revised Code.

(2) Terminate the provider agreement entered into with ODJFS pursuant to rule 5101:2-16-44 of the Administrative Code.

Ohio Adm.Code 5101:2-16-72 does not address rights to appeal the ODJFS action.

{¶ 22} In summary, no provision in R.C. Chapter 5104 or administrative rule related to the publicly funded child care authorizes an appeal to the court of common pleas from an ODJFS decision suspending or terminating a contract entered pursuant to R.C. 5104.32 or a decision regarding an identified overpayment.

## B.  R.C. 119.12

{¶ 23} Small World sought judicial review of ODJFS's decision under R.C. 119.12. R.C. Chapter 119, the Ohio Administrative Procedure Act, focuses on two distinct sets of procedures: (1) the procedures governing administrative rulemaking (R.C. 119.02 to 119.04), and (2) the procedures governing administrative decisions by agencies (R.C. 119.06 to 119.13).  *Crawford-Cole v. Lucas Cty. Dept. of Job & Family Servs.*, 121 Ohio St.3d 560, 2009-Ohio-1355, 906 N.E.2d 409, ¶ 28.  "[T]he second part of the chapter, R.C. 119.06 to 119.13, * * * concerns agency adjudications and the procedures for notice, hearing, and appeal of those decisions."  *Id.* at ¶ 29.

{¶ 24} R.C. 119.12 specifies who may pursue an administrative appeal in the common pleas court.  Specifically, R.C. 119.12(A)(1) states:

Except as provided in division (A)(2) or (3) of this section, any party adversely affected by any order of an *agency* issued pursuant to an

*adjudication denying an applicant admission to an examination, or denying the issuance or renewal of a license or registration of a licensee, or revoking or suspending a license, or allowing the payment of a forfeiture under section 4301.252 of the Revised Code* may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident.

(Emphasis added.) Alternatively, R.C. 119.12(B) provides, "Any party adversely affected by any order of an *agency* issued pursuant to *any other adjudication* may appeal to the court of common pleas of Franklin county * * *." (Emphasis added.)

{¶ 25} R.C. 119.01 provides definitions for relevant terms. The term "agency" is defined as:

"Agency" means, except as limited by this division, [1] any official, board, or commission having authority to promulgate rules or make adjudications in the civil service commission, the division of liquor control, the department of taxation, the industrial commission, the bureau of workers' compensation, [2] the functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code, and [3] the licensing functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state having the authority or responsibility of issuing, suspending, revoking, or canceling licenses.

R.C. 119.01(A)(1).   With respect to the ODJFS, R.C. 119.01(A)(2) further provides:

> (2) "Agency" also means any official or work unit having authority to promulgate rules or make adjudications in the department of job and family services, but only with respect to both of the following:
>
> (a) The adoption, amendment, or rescission of rules that section 5101.09 of the Revised Code requires be adopted in accordance with this chapter;
>
> (b) The issuance, suspension, revocation, or cancellation of licenses.

R.C. 119.01(A) also exempts certain named agencies from its coverage.

{¶ 26} "Adjudication" means "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."   R.C. 119.01(D).   "License" is defined as "any license, permit, certificate, commission, or charter issued by any agency."   R.C. 119.01(B).

{¶ 27} Small World argues that it was aggrieved by a decision of ODJFS and that it has a right to appeal that decision pursuant to R.C. 119.12.   Small World complains that ODJFS should have promulgated rules providing for a state hearing and judicial review.   Small World's arguments are unavailing.

{¶ 28} R.C. 119.12 does not provide for judicial review of all decisions of all state agencies.   *See, e.g., Baltimore Ravens, Inc. v. Self-Insuring Emp. Evaluation Bd.*, 94 Ohio St.3d 449, 452, 764 N.E.2d 418 (2002); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 194, 421 N.E.2d 128 (1981).   ODJFS constitutes an "agency" for purposes of R.C. 119.01(A) only if "it is

described by one or more of the three branches of the definition of 'agency' and not otherwise excluded." *Id.* Again, those branches consist of (1) the agencies enumerated in the statute, (2) "functions * * * specifically made subject to R.C. 119.01 to R.C. 119.13," and (3) agencies with the authority to issue, suspend, revoke or cancel licenses.

{¶ 29} Here, ODJFS is not one of the agencies specifically identified in R.C. 119.01(A)(1), and this matter does not concern licenses. R.C. 5104.38 grants rulemaking power to ODJFS regarding financial and administrative requirements for publicly funded child care and required the rules to be adopted in accordance with R.C. Chapter 119. However, R.C. Chapter 5104 did not make decisions relating to contracts with publicly funded child care providers subject to R.C. 119.12 (the right to appeal adjudications). Accordingly, ODJFS does not fall within the definition of an agency, as set forth in R.C. 119.12(A)(1).

{¶ 30} R.C. 119.01(A)(2) specifically addresses ODJFS. The decisions that Small World attempted to appeal to the trial court did not concern "the adoption, amendment, or rescission of rules" and "the issuance, suspension, revocation, or cancellation of licenses." Consequently, ODJFS also is not an agency within the meaning of R.C. 119.01(A)(2).

{¶ 31} Because the two decisions on appeal are not decisions of an "agency," as defined by R.C. 119.01(A), Small World had no right to appeal the two decisions to the court of common pleas pursuant to R.C. 119.12.

{¶ 32} Small World further asserts that it can appeal the two ODJFS decisions, pursuant to R.C. 119.12, because R.C. 5101.46 (governing of the administration of Title XX social service funding through grants to ODJFS) grants ODJFS rule-making authority,

in accordance with R.C. Chapter 119, regarding publicly funded child care. R.C. 5101.46 states, in part: "Rules governing eligibility for services, program participation, and other matters pertaining to applicants and participants shall be adopted in accordance with Chapter 119. of the Revised Code."  (We note that R.C. 5104.38 also gave rulemaking authority to the director of ODJFS regarding publicly funded child care.)

{¶ 33} The Supreme Court of Ohio has noted that many statutes incorporate R.C. Chapter 119 for limited purposes that did not include judicial review.  *E.g.*, *Baltimore Ravens* at 456-457 (discussing R.C. 4123.352(C), R.C. 4112.05, and other statutes as examples where R.C. Chapter 119 was incorporated for rulemaking, but did not provide a right of judicial review).  We find nothing in R.C. Chapter 5101 and R.C. Chapter 5104 to indicate that a provider of publicly funded child care was granted a right of judicial review, pursuant to R.C. 119.12.

{¶ 34} To the extent that Small World argues that ODJFS's decision to terminate the provider's contract is invalid, because ODJFS failed to promulgate additional rules involving Title XX funding, that issue is not properly before us.

### C.  R.C. 5101.35

{¶ 35} Small World further claims that it was entitled to appeal to the court of common pleas pursuant to R.C. 5101.35, the general appeal provision for ODJFS. Under R.C. 5101.35(B), "an appellant who appeals under federal or state law a decision or order of an agency administering a family services program shall, at the appellant's request, be granted a state hearing by the department of job and family services."  R.C. 5101.35(C) further provides:

Except as provided by division (G) of this section, an appellant who

disagrees with a state hearing decision may make an administrative appeal to the director of job and family services in accordance with rules adopted under this section. This administrative appeal does not require a hearing, but the director or the director's designee shall review the state hearing decision and previous administrative action and may affirm, modify, remand, or reverse the state hearing decision. An administrative appeal decision is the final decision of the department and, except as provided in section 5160.31 of the Revised Code, is binding upon the department and agency, unless it is reversed or modified on appeal to the court of common pleas.

{¶ 36} R.C. 5101.35(E) expressly provides for judicial review. It states, in part: "An appellant who disagrees with an administrative appeal decision of the director of job and family services or the director's designee issued under division (C) of this section may appeal from the decision to the court of common pleas pursuant to section 119.12 of the Revised Code."

{¶ 37} Small World asserts that it is an "appellant" of a decision of an "agency" administering a "family services program." There is no question that the provision of publicly funded child care is a "family services program." R.C. 5101.35(A)(3)(a) includes "[p]rograms that provide assistance under Chapter 5104. or 5115. of the Revised Code" in the definition of a "family services program." In addition, ODJFS is an "agency" under R.C. 5101.35. R.C. 5101.35(A)(1)(a) defines an "agency" as any of several entities, including ODJFS, that administer a family services program.

{¶ 38} The parties dispute whether Small World constitutes an "appellant." The

term "appellant" is defined as "an applicant, participant, former participant, recipient, or former recipient of a family services program who is entitled by federal or state law to a hearing regarding a decision or order of the agency that administers the program." R.C. 5101.35(A)(2).

{¶ 39} Small World asserts that it is an "appellant" under R.C. 5101.35(A)(2), because it was a "participant" in the publicly funded child care program. ODJFS responds that a child care provider receiving public funds pursuant to a contract with ODJFS is not a "participant" in the program. ODJFS further argues that R.C. 5101.35(E) provides for an appeal from an "administrative appeal decision" issued in an appeal from a "state hearing decision," and that since Small World was not entitled to such a hearing, R.C. 5101.35(E) is inapplicable.

{¶ 40} We need not address whether Small World was a "participant" of a family services program, because we find the more critical aspect of the definition of "appellant" to be whether Small World was "entitled by federal or state law to a hearing regarding a decision or order of the agency that administers the program." As discussed above, nothing in the provisions governing publicly funded child care or R.C. Chapter 119 entitled Small World to a hearing. Consequently, in the absence of an entitlement to a hearing, Small World cannot satisfy the definition of an "appellant" under R.C. 5101.35, nor did Small World received the kind of decision that is subject to appeal under this statute.

{¶ 41} Small World's assignment of error is overruled.

{¶ 42} We note that providers of publicly funded child care, such as Small World, have a possible avenue for relief. The Ohio Supreme Court "has repeatedly determined in a long line of cases in varying contexts that when an agency's decision is discretionary

and, by statute, not subject to direct appeal, a writ of mandamus is the sole vehicle to challenge the decision, by attempting to show that the agency abused its discretion." *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 23.   As explained by the Ohio Supreme Court:

> Two important competing concerns are implicated when a party wishes to challenge a particular state actor's decision that expressly is not appealable.   The first concern is that the unavailability of an appeal indicates the clear intention that full discretion is to be entrusted to the state agency.   The opposing concern is that if an agency's discretionary decision were truly allowed to be absolutely unchallengeable, an aggrieved party would have no remedy whatsoever, giving the state agency unfettered discretion and raising fundamental due process concerns.   See Section 16, Article I of the Ohio Constitution, which provides that a remedy shall be available "by due course of law."

> In light of these very significant competing concerns, courts (including this court in many different situations) have determined that some level of review must be recognized.   Furthermore, courts have determined that a writ of mandamus provides an appropriate balance between the extreme of allowing no challenge at all and the other alternative of completely ignoring the explicit directive that an agency's particular determination is not meant to be appealable.   In such a mandamus action, the aggrieved party can challenge the agency's decision, but must demonstrate an abuse of discretion before relief can be provided.

*Id.* at ¶ 25-26.

**{¶ 43}** Whether an original action in mandamus is available to Small World specifically and whether it would be successful are not before us, and we state no opinion on the merits of any such action.

### III. Conclusion

**{¶ 44}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Johnna M. Shia
Anthony S. VanNoy
Rebecca L. Thomas
Hon. Mary Katherine Huffman