[Cite as *State ex rel. Small Early World Learning Ctr. v. Ohio Dept. of Job & Family Servs.*, 2021-Ohio-954.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel., Small World Learning Center, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-532 |
| | : | (REGULAR CALENDAR) |
| Ohio Department of Job and Family Services, | : | |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on March 25, 2021

**On Brief:** *Johnna M. Shia*, for relator. **Argued:** *Johnna M. Shia.*

**On Brief:** *Dave Yost,* Attorney General, and *Rebecca L. Thomas*, for respondent. **Argued:** *Rebecca L. Thomas.*

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Small World Early Childhood Development Center, Inc., commenced this original action in mandamus seeking an order compelling respondent, Ohio Department of Job and Family Services ("ODJFS"), to (1) promulgate rules that would specifically provide for a right to appeal an ODJFS decision to terminate a daycare provider agreement ("agreement") to the common pleas court; and (2) vacate its decision to terminate the agreement. In response, ODJFS filed a motion to dismiss relator's complaint.

{¶ 2}    Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law.  The magistrate determined that this court could not order ODJFS to promulgate a rule to allow for an appeal to a common pleas court.  Therefore, the magistrate recommended that we grant ODJFS' motion to dismiss.

{¶ 3}    Relator filed objections to the magistrate's decision.  This court overruled in part relator's objections to the magistrate's decision finding that this court could not order ODJFS to promulgate a rule to allow for an appeal to a common pleas court.  However, this court sustained relator's objection to the dismissal because the magistrate failed to address relator's claim that ODJFS abused its discretion in terminating the agreement.  Therefore, we remanded this case to the magistrate for further proceedings to address this claim.

{¶ 4}    On remand, a different magistrate issued a decision, including findings of fact and conclusions of law, which addressed the relator's claim that ODJFS abused its discretion when it terminated the agreement.  That decision is appended hereto.  The magistrate found that the terms of the agreement and various provisions of Ohio law granted ODJFS the right to terminate the agreement without conducting the program integrity review set forth in former Ohio Adm.Code 5101:2-16-72.  The magistrate also found that even if an integrity review had been required, the investigation ODJFS conducted constituted an integrity review.  Lastly, the magistrate determined that ODJFS did not abuse its discretion in conducting its investigation or in terminating the agreement.  Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 5}    Relator has filed objections to the magistrate's decision.  It appears relator presents three objections to the magistrate's decision:  (1) the magistrate erred when he found that the agreement could be terminated by ODJFS without an integrity review conducted pursuant to former Ohio Adm.Code 5101:2-16-72; (2) contrary to the magistrate's decision, the investigation conducted by ODJFS did not constitute an integrity review; and (3) the magistrate erred in finding that ODJFS did not abuse its discretion when it terminated the agreement and when it refused to reconsider that termination after relator presented some additional records.  For the following reasons, we find relator's objections unpersuasive.

{¶ 6}   With respect to relator's first objection, relator fails to identify any provision of the agreement that required ODJFS to conduct an integrity review pursuant to former Ohio Adm.Code 5101:2-16-72 before it could exercise its termination right provided for in the agreement.   Nor does former Ohio Adm.Code 5101:2-16-72 negate or limit ODJFS' termination rights set forth in the agreement.   We agree with the magistrate that the terms of the agreement and applicable provisions of Ohio law gave ODJFS the right to terminate the agreement without conducting the integrity review provided for in former Ohio Adm.Code 5101:2-16-72.   Specifically, the magistrate noted that former Ohio Adm.Code 5101:2-16-44 stated that "[t]he provider agreement * * * may be terminated in accordance with the terms contained in the agreement."   Paragraph 31 of the agreement states that it may be terminated by ODJFS upon 30 days written notice and shall terminate automatically without written notice if there is a failure to honor the terms of the agreement and related state, federal, or local law and regulations.   Former R.C. 5104.32(D)(2) expressly prohibited an eligible daycare provider from possessing or using an electronic childcare card issued to a caretaker parent; knowingly seeking payment for publicly funded childcare that was not provided; and knowingly accepting reimbursement for publicly funded childcare that was not provided.   ODJFS concluded from its investigation that relator committed these violations.   Although relator appears to dispute that it knowingly sought or received payments for childcare it did not provide, relator does not dispute that its staff possessed and used electronic childcare cards issued to caretaker parents.   Based upon relator's admitted violation of former R.C. 5104.32(D)(2) alone, ODJFS' termination of the agreement was authorized by its terms and by Ohio law.   In addition, the agreement expressly granted ODJFS the absolute right to terminate the agreement on 30 days written notice.   We agree with the magistrate that relator has failed to show that an integrity review provided for in former Ohio Adm.Code 5101:2-16-72 was required before ODJFS could terminate the agreement.   Therefore, we overrule relator's first objection.

{¶ 7}   In its second objection, relator contends that the investigation ODJFS conducted did not constitute an integrity review as contemplated by former Ohio Adm.Code 5101:2-16-72.   Because we have already determined that ODJFS was not required to conduct an integrity review before terminating the agreement, this objection is moot.   Nevertheless, we agree with the magistrate that the investigation conducted by

ODJFS prior to terminating the agreement would have constituted an integrity review under former Ohio Adm.Code 5101:2-16-72. A "program integrity review" includes "reviews, audits, investigation, and other activities carried out to ensure public programs are limited to only eligible participants, and payments to providers for actual services provided and conform to program rules." *See* former Ohio Adm.Code 5101:2-16-72(A). As noted by the magistrate, ODJFS conducted an extensive investigation of relator that involved on-site observations, the review of relator's attendance records, and the review of records reflecting payments ODJFS made to relator over an 11-month period. The records reviewed by ODJFS were largely provided by relator. Relator has articulated no persuasive reason why this investigation would not constitute an integrity review. We also agree with the magistrate that former Ohio Adm.Code 5101:2-16-72 did not require that all the governmental entities identified in subsection (C) of that code provision be involved in the investigation. Rather, it simply identified those entities that may conduct such a review, which included ODJFS. For these reasons, we overrule relator's second objection.

{¶ 8} In its third objection, relator contends that the magistrate erred when he failed to find an abuse of discretion by ODJFS in terminating the agreement. We disagree. The conclusions that ODJFS drew from its investigation were based on its observations, the review of records largely provided by relator, and relator's admissions. In light of the record evidence and relator's clear contractual violations, we agree with the magistrate that relator failed to show that ODJFS abused its discretion in terminating the agreement.

{¶ 9} Lastly, relator argues in its third objection that ODJFS abused its discretion by not reconsidering its decision to terminate the agreement after relator submitted some additional records. Again, we disagree.

{¶ 10} On April 15, 2016, ODJFS provided relator with a copy of its investigation report, which recommended suspension and termination of the agreement. Relator appealed the proposed suspension and termination to ODJFS and further requested that ODJFS reconsider the overpayment calculation. On November 16, 2016, ODJFS notified relator in writing that its appeal of the suspension and termination, as well as relator's request for reconsideration of the overpayment calculation, were denied and that the decision was final and not subject to further review by the department. Approximately one month later, relator submitted to ODJFS additional records and again requested that

ODJFS reconsider its termination decision and its overpayment calculation. ODJFS refused.

{¶ 11} Given that relator did not submit these additional records to ODJFS until approximately eight months after relator received a copy of the investigation report that recommended suspension and termination of the agreement, and approximately one month after the suspension and termination had become final, we agree with the magistrate that relator failed to show that ODJFS abused its discretion. Moreover, relator's third objection only challenges ODJFS' decision to terminate the agreement—not its overpayment calculation. For the reasons previously noted, relator has failed to demonstrate that ODJFS' decision to terminate the agreement violated its terms or any provision of Ohio law. Therefore, we overrule relator's third objection.

{¶ 12} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BEATTY BLUNT and MENTEL, JJ., concur.

———————————

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel., Small World Learning Center, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-532 |
| | : | (REGULAR CALENDAR) |
| Ohio Department of Job and Family Services, | : | |
| | : | |
| Respondent. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 15, 2020

*Johnna M. Shia,* for relator.

*Dave Yost,* Attorney General, and *Rebecca L. Thomas,* for respondent.

### IN MANDAMUS

{¶ 13} This is the second magistrate's decision to issue in this original action in which relator, Small World Early Childhood Development Center, Inc., requests a writ of mandamus ordering respondent, Ohio Department of Job and Family Services ("ODJFS"), to vacate its decisions suspending and terminating relator's daycare provider agreement with ODJFS and denying relator's appeal of the termination decision, and to promulgate rules providing for appeals to courts of a decision terminating a daycare provider agreement.

{¶ 14} On October 22, 2019, in *State ex rel. Small World Early Learning Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 18AP-532, 2019-Ohio-4329 ("*Small World*"), this court issued a decision that overruled relator's first objection to the magistrate's decision, overruled in part and sustained in part relator's second objection to the magistrate's decision, adopted the magistrate's decision to the extent the magistrate recommended ODJFS's motion to dismiss be granted with respect to the first count of relator's complaint, and remanded the matter to the magistrate for further proceedings with respect to the second count of relator's complaint.

{¶ 15} This original action is now before the magistrate on this court's remand.

Findings of Fact:

{¶ 16} 1. Relator is a licensed child care provider that had a provider agreement with ODJFS to provide publicly funded daycare.

{¶ 17} 2. Paragraph 31 of the 2014 provider agreement provided that:

> This agreement may be terminated by ODJFS upon thirty days written notice. The notice will state the effective date of termination and the basis of settlement. The Provider shall cease providing publicly funded child care under this agreement on the effective date of termination. This Provider agreement shall terminate automatically without written notice if: * * * (5) there is failure to honor the terms of this agreement and related state, federal or local law and regulation.

{¶ 18} 3. After receiving allegations that relator was improperly in possession of Ohio Electronic Child Care ("ECC") swipe cards and that relator's staff was using those cards to check children into the center when they were not actually in attendance, ODJFS began an investigation.

{¶ 19} 4. In April and May 2015, ODJFS conducted two timed observations, watching the number of children entering the facility. In the April 2015 timed observation, ODJFS counted 62 children entering the facility between 6:00 a.m. and 7:00 a.m., and ECC records showed 170 children were swiped into the facility during that time. In the May 2015 timed observation, ODJFS counted 105 children entering the facility between 6:00 a.m. and 8:15 a.m., and ECC records showed 217 children were swiped into the facility during that time. ODJFS personnel entered the facility between 8:15 a.m. and 8:30 a.m. and counted

108 children. ODJFS personnel also found numerous ECC swipe cards located at the front desk of both Small World buildings.

{¶ 20} 5. Relator's owner, Christine Sanders, averred that ODJFS investigators requested records from her after the May 2015 timed observation, and relator's staff provided them.

{¶ 21} 6. Matthew Murray, a supervisor for ODJFS, averred that it was the practice of his office to make copies of any records collected from on-site visits and then send them to the provider. He attached to his affidavit certified mail receipts from the United States Postal Office showing that ODJFS sent three shipments of copies of records to relator in or before June 2015.

{¶ 22} 7. At the conclusion of its investigation, ODJFS substantiated the allegations and determined that relator had been overpaid $442,963.67.

{¶ 23} 8. On April 15, 2016, ODJFS provided relator with a copy of its investigative report, which recommended suspension and termination of the provider agreement and indicated the overpayment would be collected.

{¶ 24} 9. Kierstyn Canter, a section chief for ODJFS, averred that ODJFS sent to relator a copy of the overpayment-calculation spreadsheet, which included the children's names, with the April 2016 investigative report.

{¶ 25} 10. On April 20, 2016, relator filed an appeal of the suspension and termination, and sought reconsideration by ODJFS of the overpayment calculation.

{¶ 26} 11. On November 16, 2016, ODJFS notified relator that its appeal of the suspension and termination, as well as its reconsideration of the overpayment calculation, were both denied. The notice further informed relator that the appeal decision was final and not subject to further review by the department.

{¶ 27} 12. In December 2016, Sanders attempted to submit to ODJFS additional records, which included bus records from June to December 2014 and attendance records for April 2015.

{¶ 28} 13. On November 22, 2016, relator filed a notice of appeal in the Montgomery County Court of Common Pleas pursuant to R.C. 119.12 and 5101.35.

{¶ 29} 14. On December 19, 2016, ODJFS moved to dismiss the appeal for lack of jurisdiction pursuant to Civ.R. 12(B)(1) arguing the decisions on appeal were not

adjudications by an agency for purposes of R.C. Chapter 119 and that R.C. 5101.35 did not provide statutory authority for an appeal of the decisions.

{¶ 30} 15. On January 26, 2017, the trial court granted ODJFS's motion to dismiss, finding that relator failed to provide any authority to support a determination that it had the right to appeal and, as such, the trial court lacked jurisdiction.

{¶ 31} 16. Relator appealed that decision to the Second District Court of Appeals. In *Small World Early Childhood Ctr. v. Ohio Dept. of Job and Family Servs.*, 2nd Dist. No. 27448, 2017-Ohio-8336 ("*Small World (Second District)*"), the court upheld the determination of the common pleas court to dismiss the appeal. Specifically, the court concluded:

> [N]o provision in R.C. Chapter 5104 or administrative rule related to the publicly funded child care authorizes an appeal to the court of common pleas from an ODJFS decision suspending or terminating a contract entered pursuant to R.C. 5104.32 or a decision regarding an identified overpayment.

*Id.* at ¶ 22.

{¶ 32} 17. On July 3, 2018, relator filed the instant mandamus action (1) requesting that this court order ODJFS to promulgate rules that would specifically provide a right to appeal to the common pleas court where relator and other parties similarly situated would be able to present evidence and receive an independent review on appeal; and (2) asserting that ODJFS abused its discretion by terminating the provider agreement.

{¶ 33} 18. On July 16, 2018, respondent filed a motion to dismiss on the ground that the court cannot order ODJFS to promulgate such rules.

{¶ 34} 19. On August 14, 2018, relator filed a memorandum in response to the motion to dismiss acknowledging there are no provisions in R.C. Chapter 5104 or the Ohio Administrative Rules that authorize judicial review from this determination but asserting ODJFS is clearly mandated to do so.

{¶ 35} 20. On August 27, 2018, respondent filed a reply.

{¶ 36} 21. On December 21, 2018, the magistrate issued a decision, in which she granted respondent's motion to dismiss. Citing the analysis of the Second District Court of Appeals in *Small World (Second District)*, the magistrate found that this court could not order ODJFS to promulgate a rule that will provide a remedy, i.e., an appeal to the common

pleas court, that does not exist in the statute. Accordingly, the magistrate recommended that the court grant ODJFS's motion to dismiss.

{¶ 37} 22. Relator filed objections to the magistrate's decision, and in *Small World*, the court denied, in part, and sustained, in part, relator's objections. With regard to relator's argument that this court should promulgate rules providing for appeal to the common pleas court of a decision terminating a daycare provider agreement, the court agreed that mandamus will not lie to compel ODJFS to enact rules providing for judicial appeal in these circumstances. With regard to relator's argument that the complaint was not limited to seeking a writ of mandamus compelling ODJFS to promulgate rules, the court found that the complaint also set forth a second count alleging that ODJFS abused its discretion by terminating the provider agreement, but the magistrate failed to address this argument. The court remanded the matter to the magistrate for further proceedings on the second count of relator's complaint.

{¶ 38} 23. On August 10, 2020, this magistrate was appointed and substituted as magistrate in the present matter.

Conclusions of Law and Discussion:

{¶ 39} The magistrate recommends that this court deny relator's writ of mandamus.

{¶ 40} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 41} Relator argues that ODJFS abused its discretion when it summarily and arbitrarily terminated its provider agreement without conducting a complete and thorough integrity review, pursuant to Ohio Adm.Code 5101:2-16-72. Relator first contends that although ODJFS terminated the provider agreement pursuant to R.C. 5104.32(D) and 5104.37, neither provision grants ODJFS authority to terminate a provider agreement. The authority to terminate, relator contends, is only granted to ODJFS by Ohio Adm.Code 5101:2-16-72, and termination can only occur after an integrity review conducted by all seven of the governmental entities listed in Ohio Adm.Code 5101:2-16-72(B), which did not occur in the present case.

{¶ 42} Former R.C. 5104.32 provided, in pertinent part:

(D)

(1) The department shall establish the Ohio electronic child care system to track attendance and calculate payments for publicly funded child care. The system shall include issuing an electronic child care card to each caretaker parent to swipe through a point of service device issued to an eligible provider, as described in section 5104.31 of the Revised Code.

(2) Each eligible provider that provides publicly funded child care shall participate in the Ohio electronic child care system. A provider participating in the system shall not do any of the following:

(a) Use or have possession of an electronic child care card issued to a caretaker parent;

(b) Falsify attendance records;

(c) Knowingly seek payment for publicly funded child care that was not provided;

(d) Knowingly accept reimbursement for publicly funded child care that was not provided.

Former R.C. 5104.37 provided, in pertinent part:

(B) The department of job and family services may withhold any money due under this chapter and recover through any appropriate method any money erroneously paid under this chapter if evidence exists of less than full compliance with this chapter and any rules adopted under it.

(C) Notwithstanding any other provision of this chapter to the contrary, the department shall take action against an eligible provider as described in this section.

(D) Subject to the notice and appeal provisions of divisions (G) and (H) of this section, the department may suspend a contract entered into under section 5104.32 of the Revised Code with an eligible provider if the department has initiated an investigation of the provider for either of the following reasons:

(1) The department has evidence that the eligible provider received an improper child care payment as a result of the provider's intentional act.

* * *

(E)

(1) Except as provided in division (E)(2) of this section, the suspension of a contract under division (D) of this section shall continue until the department completes its investigation * * *.

(2) If the department initiates the termination of a contract that has been suspended pursuant to division (D) of this section, the suspension shall continue until the termination process is completed.

**{¶ 43}** Former Ohio Adm.Code 5101:2-16-72 provided, in pertinent part:

(A) What is a program integrity review?

Program integrity reviews include reviews, audits, investigations, and other activities carried out to ensure public programs are limited to only eligible participants, and payments to providers are for actual services provided and conform to program rules.

(B) Who performs program integrity reviews?

The Ohio department of job and family services (ODJFS) performs program integrity reviews along with the Ohio auditor of state, Ohio attorney general, Ohio inspector general, U.S. department of health and human services (HHS), the HHS office of inspector general, and the U.S. government accountability office.

(C) Who shall comply with publicly funded child care program integrity reviews?

Child care providers with a provider agreement pursuant to rule 5101:2-16-44 of the Administrative Code and caretakers determined eligible for publicly funded child care pursuant to rule 5101:2-16-30 of the Administrative Code shall cooperate and participate in reviews conducted by ODJFS, the Ohio auditor of state, the Ohio inspector general, the Ohio attorney general, any entity acting on behalf of ODJFS, or the federal government.

* * *

(F) What happens if ODJFS determines misuse of publicly funded child care or Ohio electronic child care (Ohio ECC) as defined pursuant to paragraph (B) of rule 5101:2-16-71 of the Administrative Code?

ODJFS may do any of the following:

(1) Suspend the provider agreement entered into with ODJFS pursuant to rule 5101:2-16-44 of the Administrative Code and in accordance with section 5104.37 of the Revised Code.

(2) Terminate the provider agreement entered into with ODJFS pursuant to rule 5101:2-16-44 of the Administrative Code.

{¶ 44} In the present matter, the magistrate finds relator's arguments unavailing. Both the Ohio Administrative Code and the provider agreement entered into between ODJFS and relator specifically provide for termination without a program integrity review pursuant to Ohio Adm.Code 5101:2-16-72. Paragraph 31 of the 2014 provider agreement provides that the agreement may be terminated by ODJFS upon 30 days written notice, and shall terminate automatically without written notice if there is a failure to honor the terms of the agreement and related state, federal, or local law and regulations.

{¶ 45} Former Ohio Adm.Code 5101:2-16-44, entitled "Provider agreement for payment of publicly funded child care," provided, in pertinent part:

(P) The provider agreement as entered into with ODJFS, may be terminated in accordance with the terms contained in the agreement.

{¶ 46} Thus, former Ohio Adm.Code 5101:2-16-44 specifically indicates that the terms of the provider agreement control, and the provider agreement here permits termination of the agreement with 30 days written notice for any reason, and automatic termination of the agreement without written notice if a party fails to honor the terms of the agreement.

{¶ 47} Furthermore, even if a "program integrity review" were required, ODJFS's current investigation met the definition, as former Ohio Adm.Code 5101:2-16-72(A) provides that a program integrity review includes reviews, audits, investigations, and other

activities to ensure participants and providers are following the program rules. Relator's contention that such a review requires the participation of all seven governmental entities listed in Ohio Adm.Code 5101:2-16-72(B) is unfounded. The list of entities included in Ohio Adm.Code 5101:2-16-72(B) is not a list of entities required for every review, but a list of entities that may participate in an investigative review along with ODJFS. This is apparent by the use of the disjunctive "or" in the listing of entities in Ohio Adm.Code 5101:2-16-72(C).

{¶ 48} Relator next argues that ODJFS abused its discretion when it summarily and arbitrarily relied upon an incomplete, unreliable, and self-serving investigative report and incomplete records to terminate relator's provider agreement. Relator first contends that, although ODJFS relied upon attendance records from June 2014 through April 2015, these records were incomplete and missing a six-month timeframe that relator provided later. Relator contends it did not know what records were collected by ODJFS until after ODJFS proposed to terminate the provider agreement.

{¶ 49} However, relator has not shown a clear legal right to the relief sought. Despite relator's contention that the records relied upon were incomplete, relator was responsible for what records were submitted to ODJFS. Relator's owner, Christine Sanders, admitted in her affidavit that ODJFS investigators requested records from her, and relator's staff provided them. Although Sanders also claimed in her affidavit that she and her employees were intimidated and rushed at the time they provided the records, there is no evidence that relator ever timely informed ODJFS that it had additional records. It was not until December 2016 that Sanders attempted to submit additional records, which was well after ODJFS issued its final decision. Notwithstanding, as noted by ODJFS, the majority of the additional records are in the form of bus records that do not meet the record of daily attendance requirements set forth in Ohio Adm.Code 5101:2-12-20(L). Ohio Adm.Code 5101:2-12-20(L) provides that the record of daily attendance must be recorded by a child care staff member upon the child's arrival and departure and include the names and birth dates of children, the names of the child care staff members responsible for the group, and the designated area used as home base. Furthermore, although relator asserts that it was unaware of what records ODJFS collected from relator at the time of the May 2015 investigation, Matthew Murray, a supervisor for ODJFS, averred that ODJFS sent copies to relator in or before June 2015 via certified mail.

{¶ 50} Relator also asserts that the investigative report did not mention specific names, contain written statements, contain the actual ECC information for the timed visual observations, contain the names of the children involved, or indicate that the record collection was not complete. However, as already mentioned above, there is no evidence that relator timely informed ODJFS that it did not submit all of its records. Furthermore, as for relator's claim that the investigative report did not include the names of the children involved, relator presents no evidence to support such claim, and ODJFS counters that it would have no reason to redact the names of the children to keep them confidential from the provider.  Canter also averred that ODJFS sent to relator an unredacted version of the overpayment-calculation spreadsheet, which included the children's names, with the April 2016 investigative report.

{¶ 51} Finally, relator argues that ODJFS failed to consider relator's difficult position and the unrealistic nature of the ECC system. However, relator cannot show that ODJFS had a clear legal duty to provide the relief relator requests . ODJFS was under no clear legal duty to not enforce the provider agreement, Ohio Revised Code, or Ohio Administrative Code because relator believed the ECC system was complicated, unrealistic, and difficult to adapt to real-life circumstances, and put too much responsibility in the hands of the caretakers. Relator chose to enter into a provider agreement with ODJFS to become a publicly-funded child care provider and agreed to abide by the rules in the provider agreement, Ohio Revised Code, and Ohio Administrative Code. That ODJFS held relator to the terms of the provider agreement and laws and rules of Ohio is not a ground for granting mandamus relief.

{¶ 52} Accordingly, it is the magistrate's recommendation that this court deny relator's complaint for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).